Albert J. Soler (AS1974)
SCARINCI HOLLENBECK
519 8th Ave., 25th Floor
New York, NY 10018
Tel: (212) 784-6914
Fax: (212) 808-4155
asoler@sh-law.com

*Attorneys for Plaintiff, Renelio Perez and Old Music Live*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENELIO PEREZ, an individual Italian citizen, and OLD MUSIC LIVE, a Polish limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> RAÚL ALEJANDRO OCASIO RUIZ (p/k/a RAUW ALEJANDRO), an individual, and DOES 1-10, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DEFAMATION, DEFAMATION PER SE, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, RENELIO PEREZ, an individual, and OLD MUSIC LIVE by and through their undersigned counsel, hereby submit this Complaint and complain and allege as follows:

## THE PARTIES

1.      Plaintiff Renelio Perez is an individual Italian citizen domiciled and residing in Switzerland (herein "Perez").

2.      Plaintiff Old Music Live is a limited liability company founded and owned by

1

Plaintiff Renelio Perez and organized under the laws of Poland, with offices located at Rynek

Glowny 28, 31-010, Krakow, Poland (herein "OML" and together with Perez "Plaintiffs").

3.      Plaintiffs are informed and believe, and on such basis allege, that defendant Raúl

Alejandro Ocasio Ruiz, (known professionally as Rauw Alejandro) (herein "Defendant") is a

citizen of the United States, and that he is domiciled within, and therefore a citizen of, the State of

Florida.

4.      Defendants Does 1-10 are fictitious defendants whose identities are unknown to

Plaintiffs at this time but who Plaintiffs allege have, or may have, liability or culpability in the

defamatory conduct alleged by Plaintiffs herein.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over the instant dispute and parties pursuant to

28 U.S.C. § 1332(a)(3), which confers original jurisdiction upon the federal district courts over all

civil actions wherein the amount in controversy exceeds $75,000 and the dispute is between a

citizen of a State (Florida) and citizens of a foreign state (Italy and Poland).

6.      This Court has personal jurisdiction over Defendant because Defendant's conduct

complained of and set forth in this Complaint was purposefully directed at, among others,

Defendant's fans, music afficionados, individuals, social media platforms, and other outlets

located in, having a significant presence in, and/or who transact substantial business in the State

of New York.

7.      Venue is proper in this judicial district for all causes of action. 28 U.S.C. §§1391(b)

& (c) and 1400(b) in that defendants transact business in this Judicial District and a substantial

part of the events or omissions giving rise to the claims herein occurred within this Judicial District.

## GENERAL ALLEGATIONS

**Plaintiffs' Endeavors and Reputation in the Entertainment Industry**

8.      Plaintiff Renelio Perez is an established, respected, and talented concert promotor who has, throughout the years, helped shape the European concert landscape by, among other things, promoting and producing top quality concerts by renowned musical artists, including, among others, renowned Latin and Reggaeton superstars Maluma and his *Papi Juancho World Tour 2022*, Bad Bunny, Karol G, Ryan Castro, and Il Divo via Plaintiff Perez's entertainment companies including Old Music Live.

9.      An important figure in the global entertainment and concert landscape, Plaintiff Perez and his companies have successfully organized and produced countless concerts, shows, and top-quality musical experiences throughout the world including, among others, concerts, shows, and productions in the most important stages and venues in Switzerland, Poland, France, and Portugal.  Plaintiff Perez's goal in each instance has been to elevate, inspire, and create memories that transcend the musical and fan experience.

10.     Plaintiff Perez is widely regarded as a leader in the European Latin music concerts, promotions, shows, and entertainment industries due to his attention to quality, as well as his thoughtful, respectful, and purposeful treatment of artists, managers, and related entertainment professionals.

**Rauw Alejandro and the Cancelled "Saturno World Tour 2023" Shows**

11.     Defendant Rauw Alejandro is a famous, influential, and renowned Latin and Reggaeton artist who has earned and amassed critical acclaim and recognition due to his musical stylings with chart-topping songs including Billboard Hot 100™ hits "Todo de Ti," "Party (feat. Bad Bunny)," "Beso (featuring Rosalia)," and "Te Felicito (feat. Shakira)." Defendant also recently performed an energetic medley with fellow artists Juanes at the 2023 Latin Grammys and

Defendant's "Playa Saturno" album landed at No. 4 on Billboard's Top Latin Albums chart.

12.    Defendant's popularity and global recognition and reach confers upon Defendant a significant amount of influence over an *enormous and extremely engaged and loyal fanbase*. Importantly, as of January 9, 2024, Defendant's official Instagram social media page boasts *no fewer than 19.1 million* loyal fans and followers, while Defendant's social media broadcast channel "El Zorro Dice …" boasts no fewer than 731,000 fans. Notably, many of Defendant's social media "fan pages" are also followed by hundreds of thousands of Defendant's fans throughout the world, adding to Defendant's reach and influence.

13.    Defendant's notoriety, popularity, and loyal fanbase throughout the world provides Defendant with a powerful platform followed by millions of his adoring and loyal fans. Indeed, each of the Defendant's social media posts are *followed by and carefully read* by hundreds of thousands of people. For example, Defendant's Instagram post dated December 24, 2023 was "liked" by more than 416,775 people and garnered and amassed no fewer than 3,364 comments, while his December 11, 2023 Instagram post was "liked" by 1.3 million people and amassed no fewer than 7,817 comments.[1]

14.    Defendant's reach and his ability to command and garner the attention of millions of fans is patently and clear and Defendant's ability to *reach millions and millions of people* with *a single social media post* is unquestionable and undeniable.

15.    In 2023, Defendant, his team, and Plaintiff (collectively, the "Parties") agreed to a series of concert performances in Europe, including shows in Poland, the Netherlands, and at the

---

[1] Popular and influential social media sites and platforms, including Instagram, YouTube, and TikTok, allow users and fans to follow artist social media accounts and official social media pages. Users, fans, and followers of a particular entertainer's or artist's account or "page" are also permitted to write, compose, and submit comments in response to any entertainer's or artist's post, comment, or image appearing on the entertainer's or artist's official social media account or page.

renowned Hallenstadion in Zurich, Switzerland (the "Hallenstadion Show").     Zurich's
Hallenstadion venue is highly regarded among the most prominent, important, and significant
music performance venues in Europe and the concert and performances hat take place at the
Hallenstadion garner significant fanfare and press.  Importantly, the Hallenstadion is the largest
multifunctional indoor venue and stadium in Switzerland and seats more than 15,000 people.

16.     Although the Parties had initially agreed to additional performances in both Poland
and in Dusseldorf, Germany, the Parties ultimately agreed to limit the tour schedule but to proceed
with the Hallenstadion Show due to, among other things, lackluster ticket sales in both Poland and
Dusseldorf, Germany.  Importantly, Plaintiffs, Defendant's booking agent, and Defendant were
aware of the lackluster ticket sales and, as a result, the Parties agreed to cancel the Poland and
Dusseldorf shows.

17.     Once the Parties had agreed to move forward with the Hallenstadion Show, Plaintiff
Perez continued with the extensive preparation necessary to realize a concert of the size,
importance, and magnitude of the Hallenstadion Show.  Plaintiffs paid Defendant, via his
promotor, the agreed-upon performance fee of four hundred fifty-thousand Euros (450,000€) for
Defendant's participation and performance at the Hallestadion Show (the "Performance Fee").

18.     The Parties also discussed the fact that Plaintiffs had not received the requisite
production information from Defendant and his team. Importantly, Defendant and his team were
patently aware of the lackluster ticket sales and the lack of production information, which were
important factors that influenced Defendant's decision to cancel the Poland and Dusseldorf
performances.  The Hallenstadion Show was ultimately set for September 30, 2023.

19.     Defendant and his team were, at all times, solely responsible for providing and
circulating to Plaintiff the requisite documents necessary to realize the Hallenstadion Show.

Understandably, given the magnitude and importance of the Hallenstadion Show, Plaintiffs *immediately and repeatedly* requested that Defendant and his team, including his management team, provide all requisite documentation and paperwork required by – not only the Hallestadion venue (e.g., rigging, technical information, show parameters) – but by customs and immigration authorities who, understandably, required specific documentation and clearances prior to allowing the production team and crew to clear customs and travel into Switzerland for the show.

20.    Instead of providing the requisite technical and related documentation, however, Defendant's team did not communicate with Plaintiffs regarding the pending documentation until Monday, September 25, 2023 – *a mere five days before the scheduled Hallenstadion Show*. Understandably, Defendant and his team's failure to provide the necessary documentation in a timely manner prejudiced and significantly hampered Plaintiff Perez's ability to properly plan for a show of the magnitude and scale of the Hallenstadion Show.

21.    The fact is that Plaintiff Perez repeatedly requested – but did not receive – the requisite technical, logistical, and other information requested by both Plaintiffs and the venue. Plaintiff Perez's assertions are supported by several communications and emails including, among other things, an email from Production Service Switzerland AG to Proyect Arte, Defendant's tour production company responsible for providing the requisite documentation, establishing that the production team had been pleading with Defendant's team for the necessary and vital information necessary to realize a show of the magnitude of the Hallenstadion Show.  Importantly, in the email, Production Service writes:

> "Dear Jose The show is happening in 2 weeks and we have simply NO information. This is critical! Some crew is difficult to get (especially riggers). Also, we still need to approve static engineering of rigging plot, which also takes time. Please advise when you can provide us the below information:

1. Crew Calls
2. Rigging Plot
3. Rigging needs (material & riggers)
4. Timing (get-in, mark-out)
5. Power needs
6. Layout
7. Parking requests
8. Permits"

22.     The email quoted above is one of numerous emails evidencing that the cancellation was due, in significant part, to an utter lack of attention, care, and thoughtfulness by Defendant and his team as it pertains to the provision of the requisite information necessary to realize the Hallestadion Show.  Instead of addressing the issues and providing the requisite information, Defendant opted to, as discussed below, *publicly and improperly shift blame* to Plaintiffs, defame Plaintiff via the Re-Post (as defined *infra*), and inflict significant and irreparable harm to Plaintiffs, their reputations, and Plaintiffs' present and future business prospects. Perhaps the most bothersome aspect was Defendant's incitement of an already delicate situation and Defendant's irresponsible encouragement to "go after" Plaintiffs for the cancellation.

23.     Not only did Defendant's team fail to provide Plaintiffs with the requisite production related documents to provide to Hallestadion's production team, but Defendant and his team also failed to provide Plaintiff Perez's carrier – tasked with transporting the equipment via cargo fleet to Zurich, Switzerland – with the customs, import, and immigration documentation required to properly transport and import the extensive amount of production equipment, gear, and materials into Switzerland.

24.     In fact, Hallenstadion's management has since notified Plaintiffs that Defendant's production crew had, in fact, traveled with the approximately eighty (80) rigging motors required to build the Hallestadion performance stage without the certifications required by the venue, meaning that – *even assuming the riggings would have arrived at the venue timely* – the venue

would not have neither permitted entry of the same nor construction of the stage.

25.    The Hallenstadion Show was ultimately cancelled due to the persistent lack of communication and documentation by Defendant and his team, much to surprise and disappointment of Plaintiffs. Plaintiff Perez has, at all times during his extensive career, conducted himself with integrity and professionalism and a cancellation of this magnitude was a significant disappointment, especially given that the cancellation was due to *circumstances clearly out of Plaintiffs' control* and due, in large part, to the negligence and the irresponsible conduct of Defendant and his team.

26.    Defendant did, of course, gladly accept the Performance Fee paid by Plaintiffs for the Hallenstadion Show and has refused to refund the same despite the facts and circumstances surrounding this dispute and resulting cancellation of the show. The fact remains that Defendant and his team utterly failed to uphold their end of the bargain by irresponsibly failing to provide the requisite documentation necessary to realize the Hallenstadion Show – an act which led to the ultimate cancellation of the show.

**Defendant's Defamatory Conduct**

27.    As noted, Defendant and his team were patently aware of the specifics and reasons why the Poland, Dusseldorf, and other shows were cancelled.  Specifically, the shows and performances were cancelled due to, among other things, lackluster ticket sales and, in some instances, the lack of documentation and preparation by Defendant and his team.  Importantly, Defendant and his team were no strangers to cancelled shows, as noted by the publication Europa FM in a 2023 article and expose highlighting and discussing the cancellation of numerous Rauw Alejandro shows and concerts (the "Europa FM Article").[2]

---

[2] Available at https://www.europafm.com/noticias/musica/problemas-show-europeos-que-han-llevado-rauw-alejandro-cancelar-saturno-wolrd-tour-latinoamerica_2023100765215719e0d7620001e7305a.html.

28.     The Europa FM Article noted that, not only had numerous European shows been cancelled, but highlighted the fact that many of Defendant's South American shows *had also been cancelled*, including, among others, shows in Costa Rica, Nicaragua, Guatemala, El Salvador, Panama, Honduras, Peru, Colombia, Brazil, and Argentina. Importantly, Defendant's shows in Spain, the Canary Islands, Italy, and London had also been cancelled. Defendant's entire world tour was eventually cancelled subsequent to the cancellation of the London performance.

29.     On September 29, 2023, shortly after the disappointing and bothersome cancellation of the Hallenstadion Show, Plaintiff Perez – *without implicating or placing blame on either Defendant or his team* – posted a good faith, tactful, and respectful announcement explaining the facts and circumstances surrounding the cancellation on Plaintiff's Instagram account. Plaintiff's social media post (the "OML Post") read:

> "The production equipment will not be able to pass customs in time due to problems with the documents. We will answer your questions in the next few days and we ask for your patience."
>
> ***
>
> "With great regret and after exhausting all resources and possibilities to hold the long-awaited live concert by Rauw Alejandro, which was planned for this Saturday, September 30th at the Hallenstadion Zurich, we unfortunately have to inform you that we regrettably have to cancel the show. The production equipment will not arrive on time due to problems with the customs clearance documents.
>
> On behalf of the organization, we apologize to everyone who wanted to attend the concert. The artist and his entire team worked with a high level of professionalism and tried everything to find a solution.
>
> We are in contact with the management to look for possible alternative dates so that we can give you more concrete information about the rescheduled concert in the next few days." (English Translation of OML Post) (See Exhibit 1)

30.     Notably, although Plaintiff Perez was aware that Defendant and his team were to

blame for cancellation of the Hallenstadion Show, Plaintiff Perez maintained positivity and, at all times, opted to protect and shield the Defendant, as a prominent artist, from the imminent backlash that would take place had Plaintiff opted to behave less professionally and disclosed the *actual facts and circumstances surrounding the cancellation of the sho*w and the fact that Defendant and his team were to blame.

31.     In a bothersome and blatant effort to distract the public and his loyal fans from the reality and truth surrounding cancellation of the Hallenstadion Show, Defendant opted *not to return the professional courtesy* and, instead, elected to publish and disseminate inaccurate, self-serving, and defamatory accusations in efforts to exculpate himself, incite a response from fans, and improperly shift the blame to Plaintiffs.

32.     Despite the numerous documented cancellations of Defendant's shows and performances, as noted in the Europa FM Article, Defendant, shortly after Plaintiff Perez's post and well-aware of his extensive reach, nonetheless decided to re-post Plaintiff's OML Post to his more than 19.1 million loyal followers with an inaccurate and defamatory commentary and (a) *a prominent, intentional, and damaging "arrow" pointing directly at OML's social media handle* "@oldmusicliveasg" and (b) *a large and prominently placed "thumbs down" emoji* (herein the "Re-Post"):

> "Mi gente de Zurich, cuidado con estos promotores. Yo siempre ando ready para cantar. Pidanle el dinero de veulta y tambien pueden exigir mas. No se defen de nadie."
>
> ***
>
> "My people of Zurich, be careful with these promotors. I am always ready to sing. ***Ask for a refund and you can also ask for more! Don't let anyone take advantage of you.*** (English Translation) (Emphasis Added) (See Exhibit 2)

33.    Defendant's inaccurate, defamatory, and unnecessarily inciteful comment clearly reference Plaintiffs Perez and OML, as the promotor and organizer of the Hallenstadion Show, and Defendant's blatant and bothersome use of the "arrow" pointing directly to Plaintiffs' social media handle completed Defendant's attempt to shift the blame for the cancellation to Plaintiffs and to incite his legions of loyal fans to take action against Plaintiffs. Indeed, Defendant's comments explicitly stated that Plaintiff Perez and OML were "taking advantage" of Defendant's fans and incited his fans to seek "refunds and ask for more." See Exhibit 2.

**The Aftermath and Unwarranted Backlash Against Plaintiff**

34.    Although Defendant and his team were well-aware that the countless cancellations were due, in part, to inadequate communication by Defendant's team with the promotors, venues, and other related to the concert and show production process and lackluster ticket sales, Defendant nonetheless *opted to use Plaintiff as a scapegoat* for the cancellation of the Hallestadion Show.

35.    Although Defendant had been forced to cancel numerous shows throughout the world, as detailed in the Europa FM Article, Defendant nonetheless elected to defame Plaintiffs and disingenuously suggest and insinuate that Plaintiffs were responsible for the cancellation. Defendant's defamatory conduct unleashed a *barrage of backlash, hate, and accusations* against Plaintiffs and caused significant interference with numerous prospective business opportunities in the entertainment and concert business.

36.    Importantly, subsequent to Defendant's Re-Post, a barrage of Defendant's fans posted damaging comments on various social media sites, including Instagram, berating Plaintiff Perez and OML and accusing Plaintiffs of theft and fraud in connection with the cancellation of the Hallestadion Show.  Defendant had accomplished his goal of improperly shifting the blame onto Plaintiffs, which resulting in a barrage of damaging negative comments from Defendant's

fans against Plaintiffs.

37.     Indeed, Defendant's false and defamatory Re-Post improperly incited fans to revolt against Plaintiffs, despite the fact that neither Plaintiff Perez nor OML were responsible for cancellation of the Hallestadion Show. Either way, the damage had been done and Defendant's fans immediately began berating Plaintiffs.  For example:

- A fan named Melisa wrote that Plaintiff and OML were a "Fraudulent company and too cowardly or ignorant to take responsibility for his completely unprofessional actions[.]" (English Translation) (See Exhibit 3)

- An Instagram user named Benachrichtigungen wrote that "the CEO of Old Music Live [Renelio Perez] is a fraud! Please never buy the tickets. The festivals and concerts will be cancelled and you will never see the money back."  (English Translation) (See Exhibit 4)

- Numerous fans wrote negative comments following Defendant's Re-Post writing, among other things, that *OML ripped off all of Europe* and that they wanted their money back. (See Exhibit 5)

38.     The unwarranted and undeserved backlash has caused significant damage to Plaintiff's reputation and has, already, permanently, and negatively affected Plaintiffs' business and economic prospects.

39.     For example, in December 2023, SeeTickets, an entertainment company and concert insider, had reached out to Plaintiffs regarding world-renowned Latin artist Luis Miguel and the group's desire to collaborate with Plaintiffs to bring top-quality Luis Miguel concerts to Europe in 2024 and 2025. Plaintiffs were extremely and understandably excited about this promising and important opportunity, considering that Luis Miguel is prominent, high profile, and arguably the best-selling Latin music artist of all time, having sold *more than 60 million records worldwide.* Collaborating with an artist of Luis Miguel's caliber, reputation, and prestige was a tremendous and important business opportunity for Plaintiffs.

40.     However, as expected, once Defendant's defamatory statements and patently

inaccurate accusations surfaced, SeeTickets promptly contacted Plaintiff Perez via email on November 13, 2023 notifying him that, due to Defendant's accusations and statements hurled against Plaintiffs – *including those in Defendant's defamatory Re-Post and the fact that SeeTickets had a relationship with Defendant* – that SeeTickets had reconsidered and had decided that investing with Plaintiffs was, all of a sudden, too risky until Defendant's allegations were resolved.

41.    Likewise, concert powerhouse Live Nation had also contacted Plaintiff Perez regarding collaboration in various business endeavors in 2024 and 2025, but, shortly after Defendant's Re-Post and the devastation it caused, Live Nation decided, understandably, that it did not want to be associated with the negative backlash against Plaintiffs and that they would halt discussions until further notice.

42.    Indeed, the reputational damage to Plaintiffs and the significant loss of business prospects emanating from Defendant's defamatory conduct is, understandably, devastating to Plaintiffs and has irreparably and permanently damaged Plaintiffs' reputation, stature, and standing in the music concert industry. Although Plaintiffs have never stolen or misappropriated monies or funds of others, Defendant's reckless and intentional defamation implicated that, as evidenced by Defendant's fan's social media comments, that Plaintiff Perez and his company had done so – an accusation that Plaintiffs Perez and OML will likely not recover from.

43.    On information and belief, Plaintiff Perez also alleges that Defendant and/or his team may have disseminated additional defamatory statements and comments to numerous additional entertainment industry professionals including, among others, artist managers, agents, and related professionals that further damaged Plaintiffs. Specifically, Plaintiffs have ample reason to believe that Defendant and his team have been spreading falsities including, among other things, that Plaintiffs were "broke" (or bankrupt) and financially insolvent when neither

defamatory assertion by Defendant is true. Plaintiffs will seek information related to Defendant's and his team's alleged conduct during the discovery process.

44.     Defendant's false, untruthful, and defamatory conduct has, and continues to, cause significant and irreparable harm to Plaintiffs Perez's and OML's reputation, lucrative business prospects, income, and overall stature in the music concert business in Europe and abroad and Plaintiffs herein seeks to remedy this injustice and enforce their rights to curtail and hold Defendant accountable for his defamatory and damaging conduct.

## FIRST CAUSE OF ACTION

### Defamation

45.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

46.     Defendant knew, at the time of Defendant's Re-Post and defamatory conduct, that a significant number of Defendant's shows and performances had been cancelled all over the world (as the Europa FM Article noted).

47.     Defendant knew, at the time of Defendant's Re-Post and defamatory conduct, that the Hallenstadion Show was cancelled due to, among other things, an utter lack of attention, care, and thoughtfulness on the part of Defendant and his team and their utter failure to provide Plaintiffs with the requisite information necessary to realize the Hallestadion Show.

48.     Instead of addressing the issues and providing the requisite information, Defendant publicly and improperly shifted blame to Plaintiff Perez and OML via the Re-Post, which contained untrue and false assertions and implications that Plaintiffs had acted improperly and were responsible for cancellation of the Hallestadion Show.

49.     Defendant's publication of the Re-Post and the defamatory and patently untrue

assertions and implications contained therein resulted in immediate accusations of, among other things, fraudulent conduct by Plaintiffs.

50.    Defendant's publication of the Re-Post and the defamatory and patently untrue assertions and implications contained therein also incited Defendant's fans, which number in the millions, to "go after" Plaintiffs for the cancellation, knowing full well that Defendant and his team were responsible for the cancellation.

51.    Defendant's publication of the Re-Post and the defamatory and patently untrue assertions and implications contained therein inflicted significant and irreparable harm to Plaintiffs, their reputations, and Plaintiffs' present and future business prospects.

52.    On information and belief, Plaintiffs also allege that Defendant and/or Defendants Does 1-10, believed to be Defendant's team members, may have disseminated additional defamatory statements and comments to numerous entertainment industry professionals including, among others, artist managers, agents, and related professionals that further damaged Plaintiffs.

53.    Plaintiffs have ample reason to believe that Defendant and his team have been spreading falsities including, among other things, that Plaintiff Perez and OML were "broke," bankrupt, or financially insolvent when neither defamatory assertion by Defendant is true. Plaintiffs will seek information related to Defendant's and his team's alleged conduct during the discovery process.

54.    Defendant knowingly and intentionally published the false and defamatory Re-Post, and, on information and belief, the additional defamatory assertions regarding Plaintiffs Perez's and OML's financial status to his more than 19.1 million loyal fans via Defendant's official Instagram social media pages or accounts.

55.    The false and defamatory Re-Post and the additional defamatory assertions

regarding Plaintiffs' financial status constituted defamation and were published by Defendant maliciously, negligently, recklessly, or in bad faith.

56.    The false and defamatory Re-Post and the additional defamatory assertions regarding Plaintiffs' financial status, as reasonably understood, impugn the reputation, integrity, ability, professionalism, and stature of Plaintiffs and, importantly, has discouraged individuals and others in the entertainment industry, including potential clients and tours, from associating with Plaintiffs and, therefore, causing significant damage and injury to Plaintiffs.

57.    Defendant willfully and intentionally published the false and defamatory Re-Post for the explicit purpose of injuring Plaintiffs and to shift the blame for the cancellation of the Hallenstadion Show from Defendant to Plaintiffs.

58.    In light of the numerous show cancellations experienced by Plaintiffs due to, among other things weather and failure to provide requisite documentation as set forth herein, Defendant knew or reasonably should have known that the statements contained in the Re-Post and the additional defamatory assertions regarding Plaintiffs' financial status were false at the time they were published and continue to be false.

59.    As a direct and proximate cause of Defendant's false and defamatory conduct, Plaintiffs have suffered, and continue to suffer, substantial damages and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial.

## SECOND CAUSE OF ACTION

### Defamation *Per Se*

60.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

61.    Defendant knew, at the time of Defendant's Re-Post and defamatory conduct, that

a significant number of Defendant's shows and performances had been cancelled all over the world (as the Europa FM Article noted).

62.    Defendant knew, at the time of Defendant's Re-Post and defamatory conduct, that the Hallenstadion Show was cancelled due to, among other things, an utter lack of attention, care, and thoughtfulness on the part of Defendant and his team and their utter failure to provide Plaintiffs with the requisite information necessary to realize the Hallestadion Show.

63.    Instead of addressing the issues and providing the requisite information, Defendant publicly and improperly shifted blame to Plaintiffs via the Re-Post, which contained untrue and false assertions and implications that Plaintiffs had acted improperly and were responsible for cancellation of the Hallestadion Show.

64.    Defendant's publication of the Re-Post and the defamatory and patently untrue assertions and implications contained therein resulted in immediate accusations of, among other things, fraudulent conduct by Plaintiffs.

65.    Defendant's publication of the Re-Post and the defamatory and patently untrue assertions and implications contained therein also incited Defendant's fans, which number in the millions, to "go after" Plaintiffs for the cancellation, knowing full well that Defendant and his team were responsible for the cancellation.

66.    Defendant's publication of the Re-Post and the defamatory and patently untrue assertions and implications contained therein inflicted significant and irreparable harm to Plaintiffs, their reputations, and Plaintiffs' present and future business prospects.

67.    On information and belief, Plaintiffs also allege that Defendant and/or Defendant Does 1-10, believed to be Defendant's team members, may have disseminated additional defamatory statements and comments to numerous entertainment industry professionals including,

among others, artist managers, agents, and related professionals that further damaged Plaintiffs.

68.    Plaintiffs have ample reason to believe that Defendant and his team have been spreading falsities including, among other things, that Plaintiffs Perez and OML were "broke," bankrupt, or financially insolvent when neither defamatory assertion by Defendant is true. Plaintiffs will seek information related to Defendant's and his team's alleged conduct during the discovery process.

69.    Defendant knowingly and intentionally published the false and defamatory Re-Post, and, on information and belief, the additional defamatory assertions regarding Plaintiffs' financial status to his more than 19.1 million loyal fans via Defendant's official Instagram social media page or account.

70.    The false and defamatory Re-Post and the additional defamatory assertions regarding Plaintiffs' financial status constituted defamation and were published by Defendant maliciously, negligently, recklessly, or in bad faith.

71.    The false and defamatory Re-Post and the additional defamatory assertions regarding Plaintiffs' financial status, as reasonably understood, impugn the reputation, integrity, ability, professionalism, and stature of Plaintiffs and, importantly, has discouraged individuals and others in the entertainment industry, including potential clients and tours, from associating with Plaintiffs and, therefore, causing significant damage and injury to Plaintiffs.

72.    The false and defamatory Re-Post and additional defamatory assertions regarding Plaintiffs' financial status, as reasonably understood, suggests, implies, and imputes that Perez and OML had engaged in improper, negative, or questionable business, trade, or professional conduct.

73.    Defendant willfully and intentionally published the false and defamatory Re-Post for the explicit purpose of injuring Plaintiff and OML and to shift the blame for the cancellation

of the Hallenstadion Show from Defendant to Plaintiffs.

74.     In light of the numerous show cancellations experienced by Plaintiffs due to, among other things weather and failure to provide requisite documentation as set forth herein, Defendant knew or reasonably should have known that the statements contained in the Re-Post and the additional defamatory assertions regarding Plaintiffs' financial status were false at the time they were published and continue to be false.

75.     As a direct and proximate cause of Defendant's false and defamatory conduct, Plaintiffs Perez and OML have suffered, and continue to suffer, substantial damages and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial.


## THIRD CAUSE OF ACTION

### Tortious Interference with Prospective Business Relations

76.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

77.     Defendant's false and defamatory Re-Post and the alleged additional defamatory assertions regarding Plaintiffs' financial status, their business practices, and professional reputation has severely damaged Plaintiff Perez and OML and has interfered with Plaintiff Perez's and OML's prospective business relationships.

78.     Plaintiffs Perez and OML had a positive business relationship with both entertainment companies SeeTickets and Live Nation.

79.     Defendant's false and defamatory Re-Post and alleged defamatory assertions interfered with those relationships and halted potential business dealings and transactions Plaintiffs had with both SeeTickets and Live Nation.

80. Defendant's false and defamatory Re-Post and alleged defamatory assertions has interfered with Plaintiffs' collaboration with both SeeTickets and Live Nation with respect to the production of shows for significant Latin music artist Luis Miguel and has also halted potential business dealings and transactions Plaintiffs had with both SeeTickets and Live Nation.

81. Defendant's false and defamatory conduct was purposeful and meant to harm and shift the blame for the show cancellation from Defendant to Plaintiffs Perez and OML.

82. Defendant's false and defamatory Re-Post constituted a dishonest, unfair, and improper acts, which ultimately interfered with Plaintiffs' business relationships with entertainment companies, including SeeTickets and Live Nation.

83. Plaintiffs believe that Defendant and/or Defendant Does 1-10, believed to be Defendant's team, have communicated and thus further published the defamatory Re-Post to additional contacts and colleagues of Plaintiff Perez's, and Plaintiffs shall seek additional information during the discovery process.

84. As a result, Plaintiffs Perez and OML have sustained significant damages stemming from the loss of significant projects, concerts, and business transactions.

85. As a direct and proximate cause of Defendant's false and defamatory conduct, Plaintiffs Perez and OML have suffered, and continue to suffer, substantial damages and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial.


## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs RENELIO PEREZ and OLD MUSIC LIVE pray for:

1. As to the First Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, attorneys fees, and all other applicable damages as this

Court may deem appropriate at an amount to be ascertained at trial.

2.      As to the Second Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, attorneys fees, and all other applicable damages as this Court may deem appropriate at an amount to be ascertained at trial.

3.      As to the Third Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, attorneys fees, and all other applicable damages as this Court may deem appropriate at an amount to be ascertained at trial.


**JURY DEMAND**

Plaintiff demands trial by jury of the claims of its allegations in this action.


DATED:   March 14, 2024



                              SCARINCI HOLLENBECK

                              By: /S/ Albert J. Soler
                              Albert J. Soler (AS1974)
                              519 8th Ave., 25th Floor
                              New York, NY 10018
                              Tel: (212) 784-6914
                              Fax: (212) 808-4155
                              asoler@sh-law.com





**Exhibit 1**





**Exhibit 2**



**<u>Exhibit 3</u>**



**Exhibit 4**



